Flores v. New York Football Giants, 23-11-85. Counsel, good afternoon. Thank you, Judge Leahy. Canon Channingham of Paul Weiss for the NFL Appellants. May it please the Court. In this case, Judge Croney correctly compelled arbitration of plaintiffs' claims against three of the defendants under plaintiffs' employment agreements, but she erred by refusing to do the same for Plaintiff Flores' claims under his employment agreements with the Patriots and the Steelers, based on grounds that she raised sua sponte. As to the Patriots' agreement, that agreement was not illusory, merely because it incorporated any subsequent amendments to the NFL Constitution. The employment agreement itself is indisputably supported by mutual consideration. The Patriots lack any unilateral authority to amend the Constitution. The Constitution was, in fact, never actually amended, and the language incorporating the amendments could easily be severed. And as to the Steelers' agreement, the District Court erred by holding that it was invalid because the NFL Commissioner's approval was missing from the original copy submitted to the Court. It is undisputed that the agreement was approved. Defendants subsequently submitted a copy with the requisite approval, and defendants could simply file a renewed motion to compel arbitration on remand. Let's suppose you're right about everything you've said so far, just for the sake of the argument, of course. And let's talk a little bit, if you will, about the Steelers' contract. First of all, the claims that were referred to arbitration were all claims where Mr. Flores and his co-plaintiffs were suing teams with which they had a signed agreement that provided for arbitration. I think that was a yes or no. Am I wrong? I think the answer is no, which is to say that, for instance, with regard to the Steelers, Mr. Flores interviewed for head coaching positions with the Giants and the Texans before he was  The ones that were referred to arbitration were ones in which there was a specific arbitration clause in the contract between the coach who was applying for a promotion, in effect, and the team for which he was then working. I'm sorry, yes. So the claims that were referred to arbitration, yes. Now, so we're dealing mostly with claims that are not of that sort, where the situation is that Mr. Flores was under contract to Team A, applied for a position with Team B, and therefore, the position of the defendants is that he was still required to arbitrate with those teams, either because, in the case of somebody or other, I forget, whichever team, he was under contract with the New England Patriots at the time. Yes, the Broncos. And then with respect to the Giants and Texans, he was not under contract with anybody at the time he applied for jobs. And the assertion is that the Pittsburgh Steelers contract that he signed later, when he got a job with them, required arbitration, not because of something in that contract specifically itself, but because it incorporated, by reference, the provisions of the NFL Constitution. Is that right? Yes, that is all correct. So Judge Lynch, there is no dispute about the ability of the contract with the Patriots to reach the claims concerning the Broncos. I want to talk about the Steelers contract. Yes, so as to the Steelers contract... I have a question to start with. What are we to make of the email that transmitted that contract to Mr. Flores that says, I guess it's to his lawyer, attached to the contract for Coach, this employment agreement is not intended to infringe in any way on the lawsuit filed by Coach Flores in February 22, which is currently pending. That was the suit against the Giants. Later, it's amended. Houston, at this moment, when he's signing the contract, he's got a lawsuit already going with the Giants. And I take it your position is that the contract that he signed with the Steelers, by dint of incorporating the NFL Constitution, requires him to abandon the lawsuit that he'd already filed. Well, I think you would agree at the time he filed it, there was no arbitration clause that bound him? Yes. So our position is... So this contract requires that suit to be abandoned and referred to arbitration. Referred to arbitration, yes. So two points in response to that, Judge Lynch. The first is that our principal submission on this alternative ground, which Judge Caproni did not reach, and would be free to reach on remand if you agree with us on the issue she did reach, is that the language of the NFL Constitution contains no temporal limit. That's the language at page 603 of the Joint Appendix, which gives the Commissioner the power to arbitrate any dispute between any...Coach...and any member club or clubs. And we cite, among other things, the Masoner case, which applies Pennsylvania law, for the proposition that if there is no temporal limit... Well, we don't have a case from the Supreme Court of Pennsylvania on that, do we? That is correct. But the other side cites no Pennsylvania authority to the contrary on that point. They cite authorities from other jurisdictions. And the presumption in favor of arbitration would apply. But I want to address the email specifically. Yeah, that's what I'm asking you to address specifically. Yes. The email...you only get to the email if you disagree with us that that language is ambiguous. And then you are in parole evidence land. But I want to talk about the language... Wait, wait, wait, wait, wait, wait, wait. The...as far as parole evidence, there's an integration clause in the contract. I hope it wasn't drafted by your distinguished law firm, because it's kind of a mess. It uses or in some places and end in other places to refer to the same issues. So there is language in the integration clause that says that if a writing is attached to the contract, then that writing is not covered by the integration clause. Would you agree with that? So I don't have the integration clause in front of me, and the other side does not rely on it, but I think we would take the position, first, that the Constitution is incorporated in the agreement itself. And second, that even if you got somehow to this email, that the email does not speak to the issue that we are discussing here, which is the question of arbitration. The email, page 1135, states that this agreement, quote, is not intended to infringe in any way on the lawsuit filed by Coach Flores or his right to prosecute it. The question that we're discussing is simply where that lawsuit gets prosecuted. It's not whether or not that lawsuit gets prosecuted in court or in arbitration. I don't think a lawsuit is a different thing than an arbitration, and I think that it is indeed something that infringes on a lawsuit to say you can't pursue it where you chose to pursue it, where it is pending, but you have to pursue it in a different form of our choosing. Not even our choosing, by the way, not our, the Pittsburgh Steelers, choosing, but the NFL's choosing, right? That sounds like interfering with a lawsuit to me. But I think a point that supports our interpretation of this email is the point that the email goes on to preserve all available defenses, and I think that that suggests that this language is simply not meant, it's meant to preserve fully Mr. Flores' right to pursue his claims, and, of course, the defendant's right to assert any defense. Now, of course, our primary submission is this issue is one that Judge Caproni did not address by virtue of her holding concerning the lack of approval, and so we would certainly Right, but we're going to have to reach either ourselves or remand to the district court various other claims. I mean, you seem to suggest that we need not reach the thing that is the only thing that we seem to care about here, which is the unfairness of referring to, referring the arbitration to Mr. Goodell or his designee as the arbitrator. Well, I would submit that this court, of course, has jurisdiction only to review the denial of the motion to compel arbitration. Right, but we're not talking about a cross-appeal here. We can affirm on any ground that appears in the record, correct? This court could do so, but Judge Lynch, I would say that one thing that is a little bit peculiar here is that there is a very close relationship between these alternative grounds and the grounds that Coach Flores sought unsuccessfully to inject into this appeal on a cross-appeal from the portion of Judge Caproni's ruling. Yeah, but we're not talking about the Miami Dolphins here. We're not talking about any issue in which he wanted to get more relief out of this court than was given to him by the district court. We're talking about whether we can reach or should reach an alternative ground, which the district court did rule on, and it ruled your way. Well, so I would say that on this alternative ground regarding the Steelers, this issue of the temporal limit, our primary submission is obviously that as a matter of law, our interpretation... Forget the temporal limit. I said I was assuming I agreed with everything that you said up to then. My issues are the email, and then my other issue is the fairness, appropriateness, whether it even counts as arbitration within the meaning of the Federal Arbitration Act to say, if you have a beef with me, we'll refer to arbitration by me. Conscionability. Yeah. So I'm happy to address that too. I mean, I do think that on this temporal issue, we are content to rest on the language of the arbitration provision in the absence of a temporal limit, and I do think that what authority we have from Pennsylvania points our way. But I want to address unconscionability. I'm not being shy about unconscionability because we think that Judge Caproni's reasoning on that under other states' laws was correct, and similar reasoning applies here. So under the laws of the states at issue here, Massachusetts and Pennsylvania, these are both jurisdictions that apply the sliding scale, so you have to have both procedural unconscionability and substantive unconscionability. As to procedural unconscionability... I thought with respect to Pennsylvania in particular, though, that as things get a little bit more on the substantive side, unconscionable, then procedural unconscionability measures, so to speak, don't have to be as dramatic and vice versa. Is that correct? I think that that's a fair characterization of the sliding scale, really in both of these jurisdictions. But, of course, you know, first of all, Judge Caproni did not extend her reasoning to either of these contracts, so we're again in a world of alternative grounds for affirmance, and so these issues could be left for Judge Caproni on remand. But second, we think that we're correct with regard to both components of unconscionability. As to procedural unconscionability, the familiar standard that you have to have either unfair surprise or a lack of meaningful choice, Mr. Flores was a sophisticated party. He was a career-long NFL coach who had entered into a series of contracts incorporating these provisions and who expressly represented in signing each of these agreements that he had read and understood the NFL Constitution. So this is not the sort of classic situation in which you have such a disparate level of bargaining power that you would apply procedural unconscionability. Well, did he have a choice? In fact, with respect to the Steelers contract, did the Steelers have a choice? In other words, if Mr. Flores had tried to negotiate with the Steelers a better agreement than the one in the email that clearly said, look, we don't care about anything except the problems you have with us. This contract has no bearing on any problem you've got with any other team. They couldn't do that, could they? Well, no evidence that he tried to do that. You know, it would help, sir, if you answered the question. The Steelers could not do that, right? The Steelers... They're bound by the NFL Constitution, too. The Steelers are also bound by the NFL Constitution. So if Mr. Flores had tried to negotiate about this provision, he would have been told, sorry, Charlie, we can't do it. That may be true, but Judge Lynch, as you are aware, that is not enough to give rise to procedural unconscionability. The mere fact that the counterparty would not be willing to negotiate away a particular provision... Even if they are willing, there's a third party that says they can't, and they are bound by their agreement with the third party. Well, that is correct. And just to be clear, because the court will be aware of this from reviewing the record, the NFL Constitution is the umbrella document that sets out all of the rules of the game, the way that the playoffs are conducted. It is the governing document for the NFL. And so it is obviously central, and it is really for that reason that all coaches and players that I'm aware of have contracts that incorporate those requirements. My submission is a more modest one, which is that that is not enough in and of itself to give rise to procedural unconscionability. Now, on the issue of substantive unconscionability, Mr. Flores obviously did agree to this provision that establishes the commission... Well, if he wanted to work as a coach in the NFL, he had no choice but to agree to that. Well, that may be. And again, our submission is that as a matter of law, that's not sufficient to give rise to unconscionability. Yeah, I understand that. But you're acting like, well, he bought in. That's not quite true, is all I'm saying. Well, he is a sophisticated party. And again, the fact that the provision... He may understand perfectly well that that's what you guys want him to do, but he's got no choice about whether he wants to do it. He has to do it. He wants to work in this industry. Well, to the extent that that is a condition of being an NFL coach, my submission is that as a matter of law, that's not enough to give rise to procedural unconscionability. Now, as to this issue of substantive unconscionability, which I really understand to be the primary focus of my friend Mr. Gottlieb's argument, this question of the commissioner serving as an arbitrator is not a new one. This court dealt with that issue in NFL Management Council, the so-called Deflategate case. Of course, that was in the case of a collective bargaining agreement. That is correct. But still, I think that the provision... Where there's, in fact, an ability to negotiate. There's an ability to negotiate collectively. And the players' union chose to buy into the provisions of arbitration. All of those points are fair, Judge Lynch. But on the other hand, this is a common practice in sports leagues, and I think for good reason, given the nature of the issues that are typically subject to these arbitration provisions. Well, the ones that are typically... Sure, that's what we had in the Brady case. We had something that was about the rules on the playing field. Here we have something that's about alleged violations of federal law. But there is no dispute that that claim can equally be subject to an arbitration provision. It can be subject to an arbitration agreement. Can it be subject to an arbitration agreement that is arguably not even arbitration as understood by the Federal Arbitration Act? Well, I guess I don't quite understand what you mean by that, Judge Lynch, because it is clearly... Arbitration typically conceived as a system in which parties agree to submit their dispute to a neutral arbiter other than a court. Well, that is correct. And if you look at the Federal Arbitration Act, it contains, in Section 10, a provision that specifically addresses the bias of the arbitrator. If we agree to put our dispute before JAMS, that seems like they're going to give us a neutral arbitrator or the American Arbitration Association. They give us somebody who does not disclose some conflict of interest or who conducts himself or herself in a manner that is manifestly biased against one side, then that would be something that would come up in the course of enforcement. But what is the arbitration provision by its nature? I mean, is it your position, in effect, that any employer in the United States could require employees, as a condition of taking a job, to submit to arbitration in which the arbitration... Let's say Paul Weiss decided that its employees would be subject to arbitration and the arbitrator will be Brad Karp. Would that be something they could do? So that's the horrible offered by Mr. Flores' amicus. And I think the answer to that in most cases will be that you will have a greater degree of procedural unconscionability. And you'll be doing it outside this context... Why is it a greater degree? It's disclosed in big red letters when you sign up for your interview before you even sign the contract. And it says, these are our terms, very clearly expressed. The only problem is, whether you're sophisticated or not, the only problem is that it's substantively problematic. Judge Lynch? Why is there a greater degree of procedural unconscionability on those conditions? Well, I think that the sliding scale takes into account the position of the employee, the circumstances surrounding the employee. And we don't mean to suggest that you don't take into account at all the identity of the arbitrator in conducting this analysis. We're also mindful of the principle that all of the courts, this court, the Eighth Circuit, numerous district courts, have cited in recognizing the context of sports leagues in particular. And that is the principle going all the way back to Judge Hand's opinion in American Almond, that parties in entering into arbitration take into account the expertise of the arbitrator, which is very important in the context of sports leagues, given that the vast majority of claims that get addressed are disciplinary claims and other claims. And I would also rely on the principle that, again, Judge Caproni relied on in ruling in our favor on the other claims here, which is that if you have a specific challenge to the bias of the arbitrator in a specific context, and Judge Lynch, you adverted to the fact that these are anti-discrimination claims, and so if the claim is that, for instance, the arbitrator's conduct is being put into play or something like that, the appropriate avenue is Section 10 of the Federal Arbitration Act. And the strongest evidence, I think, that that is the appropriate forum in which to resolve these issues is the fact that here we have a case where the commissioner has now designated a third party to serve as arbitrator. It sounds like Mr. Gottlieb is still unsatisfied with the identity of the arbitrator. But if there are claims that the arbitrator here... I didn't really look into the Arizona cases that Judge Caproni cited, but in dealing with Arizona law, at least, she said, well, there is a problem under Arizona law if one side gets to unilaterally pick the arbitrator, but that's not a problem where the parties have agreed that the arbitrator would be X, even if X might appear to be someone with a conflict of interest. I don't know whether that's an accurate statement of Arizona law, but it suggests that, maybe somewhat peculiarly to my way of thinking, but Arizona law might think that it's worse to have your employer pick the arbitrator than to have your employer be the arbitrator. But isn't it as bad? Well, the cases do, and we talked about this in our brief, draw a distinction between cases where the selection procedures for the arbitrator are themselves unfair in cases where the parties agree on the identity of the arbitrator. But I guess I would come back to the point that I just made, which is that if the claim is that the arbitrator is biased... Section 10, evident partiality problem. Section 10 takes care of that. So that's an after-the-fact remedy. In other words, what you're suggesting is that we go through the arbitration and then figure it out. But, of course, arbitration proceedings are themselves a potential burden, and there's a vindication of rights issue here. Is there some other out besides Section 10, some other thing to which you resort besides Section 10 to satisfy someone that there might not be... or to really take care of these potential unconscionability issues, understanding that we're talking about these issues under Massachusetts law and Pennsylvania law? Well, I mean, I think that, Judge Levier, the framing that you just used is the right one, which is that the argument that is really being made on the other side here, and Judge Caproni used this language in her initial order, is that the potential for bias gives rise to unconscionability. And I guess our response to that is that if you have a claim that there is actual bias, and, of course, we pointed to the fact that one of the mitigating factors with regard to unconscionability is the prospect that the commissioner, in appropriate circumstances, can appoint someone else to serve as the arbitrator, precisely in context where there might be an appearance of bias and the like. But that's also entirely up to the discretion of the commissioner, correct? That is, but the commissioner runs the risk that if he does not do so in a certain circumstance, that it could give rise to a biased claim, for instance, if the commissioner's own conduct is being put into play. And so here, the commissioner has made such a designation. There's a back and forth about the particular arbitrator who has been appointed here, the former attorney general of New Jersey. So, Mr. Harvey, you know, look, of course, there are potential arbitrators out there who could be selected by the commission who are completely neutral. But my problem is the amicus, and you referred to the amicus brief, which suggests, has the Walmart example. How do you propose that we limit it in some way other than to say, oh, this is sports, it's unique? I don't know that analytically that helps me get to where you want us to. Well, I mean, I think the other distinction that I would point to is that keep in mind in this context that the employer is the team. And so when you look at the language of these provisions, and I cited, I think, earlier the language from page 603. Yeah, we're talking about language that covers a dispute between a coach and any member of a club or clubs. Now, you might wonder, what is the NFL doing in any of this? Well, the allegation in the complaint to bring in the NFL is that the NFL is acting here as a joint employer. And Judge Paproni had no difficulty in concluding, I think, correctly in that context that that's the paradigmatic situation in which you would apply equitable essential and allow the NFL to take advantage of that provision. But the fact still remains that the actual employers here are the clubs. You have an additional level of removal. So I would submit that it would be... But that's a little peculiar too, isn't it? I mean, I'm not aware of, there may be cases like this. I'm not aware of cases in which employers impose an obligation on their employees not only to arbitrate disputes with the employer, but to arbitrate disputes with any of the employer's competitors that may happen to have preexisted their entry into employment with, say, Walmart. You know, you're already suing Target because they fired you and you claim it's discrimination. Now you've got to work for Walmart. I'm not aware of cases that talk about an arbitration clause where Walmart says you have to arbitrate your dispute with Target. And that's what's going on here because it is the Steelers contract and the Patriots contract that dictate that disputes that Mr. Flores had with the New York Giants and the Houston Texans and the Miami Dolphins be arbitrated. And in fact, if you put aside the Patriots situation, the Steelers are insisting that he arbitrate disputes that he has with other teams that arose at a time when he was not under contract with anybody associated with the NFL. I haven't seen anything like that from anybody else. And on top of that, now you say, well, the NFL, you know, they're not even involved in this case at all. They're the ones who insist collectively on this provision being in the Steelers contract from which the Steelers can't vary it. Well, to be clear, Judge Lange, the parties that are invoking the arbitration provision from the Steelers contract are the Giants, the Texans, and the NFL. The Giants and the Texans are, in our view, unambiguously covered by the language the NFL gets there by virtue of equitable estoppel. I would certainly acknowledge, I don't think this is quite like the Walmart and Target example. There is obviously an affiliation here. Of course, the clubs are competitors, as all of us know, from Sunday afternoons, but they are obviously... You've got to say that, don't you? But they are. They are. As a pained chief stan, I have to say that. But the clubs are nevertheless affiliated. There's no doubt that there is a uniqueness in the context of professional sports leagues, which, again, courts have noted. But I think my fundamental response to Judge Loyer's question in this line of inquiry is that I think that the court can draw a line around that specific context here. The court can certainly leave open the possibility that in the traditional employer-employee context that there could be significant unconscionability problems with the Walmart hypothetical, both because of procedural unconscionability and because I think the substantive unconscionability inquiry could be conducted differently. But again, I think that the critical point here is that the other side is asking this court to adopt the principle that the mere possibility of bias here is enough to give rise to a problem at the threshold. And I do think that particularly given the commissioner's ability to designate anyone under the NFL's dispute resolution provisions, that that possibility, that the commissioner could decide to proceed as the arbitrator, is in some sense unripe for the analysis. In other words, the question here is not the question of whether the commissioner serving as the arbitrator would necessarily render the agreement unconscionable, precisely because the commissioner could do what he has now done. In real life, that's no longer the issue anyway, right? I mean, that seems to me to be a rather persuasive point on your side, that we're really talking about whether a provision that allows the one side of the dispute to pick the arbitrator is problematic. It's not as bad as, and the arbitrator is going to be me. Well, that is correct as a practical matter, because we now know, and this is of course addressed in the 28J letters, that we have an arbitrator. And of course it is back and forth about the arbitrator, whether this is football related, whether the disclosures concerning bias were sufficient. Those are all issues that are obviously not before the court as a matter of first instance, and they are issues that can be addressed in an after-the-fact challenge. And to get back to where I started with this argument, there are obviously claims that have already been remitted to arbitration. And so the fundamental question for this court on the appeal is whether these claims should be treated differently. And the only issue that is necessarily before the court is whether Judge Capone's reasoning as to each of these claims was correct. All of the other issues are issues that the court can address in its discretion, but need not address. And I would submit that as a matter of judicial modesty, it would be better to leave those issues for Judge Capone in the first instance. All we're asking the court to do here is to vacate Judge Capone's orders in part, insofar as she relied on this reasoning, that we would submit the legal intent of it. Well, her reasoning was you can't expect more fairness than what you agreed to in the contract. With regard to the claims that she sent to arbitration, yes. And so the question on remand would be, does she reach the same conclusion under Massachusetts law and Pennsylvania law as to these remaining claims? And I would submit that she should, because I think that her reasoning was sound with regard to both procedural and substantive unconscionability under those state laws. If you take that reasoning to a philosophical conclusion, then how could, in the context of an unconscionability issue, how could any contract that has an arbitration agreement be deemed unconscionable? And again, as I said... I have a contract. I'm the employee. And it's what I fairly expected. And therefore, necessarily, it's not unconscionable. That doesn't sound right to me. And I think I would recognize that if you took the judge-hand principle from American Almond to its logical conclusion, it would prove too much. Because it would suggest, for instance, that if you agreed to particular procedures, no matter how unfair those procedures are, there could never be an unconscionability. So I'm suggesting maybe the analysis, at least, proves too much. Well, I think that that's why I think that the court can draw lines around this specific context. So the line is sports are different when it comes to racial discrimination than other industries. No, that is not what we're saying. I think what we are saying... Sports are different altogether, and that encompasses, even with respect to claims of racial discrimination, that they could be subject to a different set of rules than other employers. So if you were to write an opinion in the first instance addressing these unconscionability issues under Massachusetts and Pennsylvania law, I would submit that there are three points that you should... Yeah, that would be weird, wouldn't it? And it would be something different, I suppose, to send this case into another sort of purgatory and refer the matters both to the Pennsylvania Supreme Court and to the Massachusetts Supreme Judicial Court to answer state law questions. But I take it you would also say, and I'll say it for you and see if you agree, that a question of effective vindication of federal rights is something that Judge Caprone did not address at all in the opinion, and therefore it would be inappropriate for us to decide any such question in the first instance. Is that your argument as well? So I think what I would say about effective vindication is that that's fairly straightforward in the wake of Italian colors, because we do think that the Supreme Court in Italian colors made clear that there are these two categories of cases, cases where the agreement forbids the assertion of certain statutory rights or cases where it imposes fees so high as to make access to the forum impractical. I really do think that this is an effort to sort of take this unconscionability argument and repackage it as an argument under the effective vindication doctrine, and I don't think that there is any... Still, has the Supreme Court ever confronted a case like the Walmart hypothetical in the amicus brief? They haven't, have they? Well, the U.S. Supreme Court has not, but it probably wouldn't because it's a matter of unconscionability. That would be a question of state law. As a matter of the effective vindication doctrine, no, the Court's never had a case like that, but as we point out, to the extent that the other side points to any authority for that proposition, it predates Italian colors, which I would submit is, first, the latest pronouncement... But wait, yeah, I understand. I know Italian colors well, but I mean, it's... When the Supreme Court says these are like the only two things that could ever be, it's a little hard to understand how that could be anything but dictum as addressed to something that has never come up before. Well, I would recognize that the Supreme Court has never had this case, but I think our submission is that, to the extent that the claim is a claim about the possibility of bias, that really sounds as a claim of unconscionability. At most, it is not... It does not rise to the same level as these two categories that the Supreme Court has recognized under the effective vindication doctrine. And so I just think that these claims are a poor fit to that doctrine as the Supreme Court has recognized it. And so, you know, I certainly do agree that, like, it would be burdensome at this point for this Court to engage in certification or any sort of exercise like that. I think the most efficient way to proceed... I'm sorry, you said what? You would agree what? That it would be burdensome at this stage of the litigation to engage in certification... That's what everybody says in your position. Well, this litigation has been going on for a while on this question of the appropriate forum. And so what I would suggest would be the most streamlined way of proceeding at this point, if the Court has concerns about unconscionability or any of these other alternative grounds, is simply to write what I think would be a fairly straightforward opinion rejecting the grounds on which Judge Caproni relied and to send this case back. She obviously has... That would be less burdensome to send it back to her so that she can decide the questions of Pennsylvania and Massachusetts unconscionability law, allowing them to appeal then and ask us to certify it a year in the future. Well, if we win, they can't appeal. That much we know by virtue of limitations on appellate jurisdiction. And I think we should win. I mean, to be clear, Judge Lynch, I think that we are correct. Judge Caproni is already familiar with these issues. And I think in some sense, to the extent that plaintiffs are seeking to inject Judge Caproni's reasoning on those issues under the laws of other states into this case, it's really an effort to circumvent that limitation on this Court's jurisdiction. Thank you very much. Thank you, Your Honor. Thank you very much. Mr. Gottlieb, good afternoon. Good afternoon, Your Honors. May it please the Court, David Gottlieb, Woodrow LLP for the Plaintiffs Appellee, Brian Flores. Your Honors, I was listening very closely to the argument that my friend just delivered. And he said something three times, which I'd like to address, which is that it's common practice for sport leagues to use their commissioner to arbitrate disputes. The NFL and its teams, Your Honors, are employers. They're employers like any other, and they should not be entitled to any special deference by virtue of being the NFL, by virtue of being a sports league or anything else. Another thing my friend said is that we don't need to worry about Mr. Goodell's bias because the cases that have been referred to arbitration have been delegated to another arbitrator, to Mr. Harvey. Those arbitration agreements, for the cases that have been already sent to arbitration, those are separate arbitration agreements that permit delegation of the commissioner's responsibilities. What we're talking about here, Your Honors, is the Constitution, and only the Constitution. This is the Constitution. And the arbitration agreement is one page. In fact, it's one line on one page that says the commissioner shall have full, complete, and final jurisdiction and authority to arbitrate. There is no, there's nothing in the NFL Constitution arbitration agreement that permits him, the commissioner, to delegate his authority. And if Your Honors look at the NFL's reply brief, where they make this argument on page 15, what they cite to, in support of the commissioner having this authority, they cite to an attachment to Mr. Flores' contract with the Dolphins, which had this separate document called the DRPG, the Dispute Resolution Procedural Guidelines, and in that document, there's some provision that permits Mr. Goodell to delegate his responsibility. There is nothing whatsoever in the NFL Constitution that permits that, unless they're going to say they can unilaterally modify the document at any time that they want. And part of that unilateral modification could be, oh, we'll use this DRPG that some other people contracted to, or that you contracted to in some other situation, or we'll just amend the Constitution, because that's what we want to do. There is nothing in the record, in the NFL Constitution, in any of the applicable contracts, the contract with the Patriots, or the contract with the Steelers, that permits the commissioner to delegate any of his responsibilities. I'd like to address, Your Honors, unconscionability and effective vindication in a moment, but since Judge Lynch, Your Honors started with the retroactivity of the Steelers contract, I'll start there. Your Honors, I think it's important to look at the timeline of what happened here, which will help demonstrate what was the intent of the parties, the Steelers and Mr. Floyd. What was the intent of the parties when they contracted? So what happened was on February 1st, 2022, Mr. Flores filed his lawsuit. 18 days later, while this lawsuit was pending, and everybody knew about it, he signed a contract with the Steelers. Everyone knew that a motion to compel arbitration was coming. There was nothing in the contract with the Steelers that said anything in that contract was going to govern a preexisting lawsuit against separate employers. And clearly, the intent of the parties, we know, is not to arbitrate those disputes because there's an email that says this employment agreement, as Your Honor, Judge Lynch quoted a moment ago, this employment agreement is not intended to infringe in any way on the lawsuit filed by Coach Flores, which is currently pending, in any way. It didn't say it won't infringe on his ability to pursue a cause of action. It said it won't infringe in any way. And Mr. Flores clearly believes that the proper venue in which his case should be heard is here in court and ultimately before a jury. Of course, as Mr. Shanmugam pointed out, it also says it's not going to infringe on the rights of the NFL or the Giants to assert any defenses. That's right. So essentially what it's saying is the status quo as of the time that this contract was signed is in effect. And what we're looking for, and my friend said we didn't quote any Pennsylvania cases for the proposition that an arbitration agreement cannot be retroactive. That's not true. Page 56 of our brief, we cited Gare v. Great Star Tools, which was Middle District of Pennsylvania. And in that case, the court refused to apply an arbitration agreement to pre-existing claims. And what that court makes clear, and not only that court, but courts around the country. We cited courts in the, we cited the Sixth Circuit, we cited the Eleventh Circuit. What you look to in determining whether an arbitration agreement is retroactive, it's simple. You look to what was the intent of the parties? Was the intent of the parties that a pre-existing lawsuit would be covered? And again, for the reasons I already described, there's nothing that says that that was their intent. And it's just, it's ludicrous to think that Mr. Flores having just filed his lawsuit and wanting to pursue it in court intended, and that the Steelers intended for this case to go to arbitration. The Steelers didn't have any choice, did they? They are bound by the NFL Constitution too. And the contract that is signed is one that incorporates, by reference, the Constitution. And it's not clear to me whether the Steelers had any right under their own obligations to vary from the incorporation of the Constitution. They did not, Your Honor. The Steelers were, are bound by the NFL Constitution. As are the Patriots. As are the Patriots. And that's why there was, that's why, Your Honor, there's an email between the general manager of the Steelers, Omar Khan, and Mr. Flores' counsel. They couldn't go and amend the Constitution, but the contracting parties here were the Steelers and Mr. Flores. And I really think it's completely disingenuous for the NFL to use this Steelers contract because what happened was Mr. Flores filed this lawsuit and he couldn't get a job after that. There was not a team that was willing to hire him, but Mike Tomlin, the head coach of the Steelers, said publicly he didn't want Mr. Flores to be on an island and he wanted to help him. And so that's part of the reason, of course Mr. Flores is a highly qualified coach, but that's part of the reason why the Steelers, why Mr. Tomlin offered him a job, why the Steelers offered him a job. Now for them to turn around and try to use that contract against him to try to force his case into a forum that clearly the NFL believes is advantageous to them and disadvantageous to Mr. Flores, I think it's an argument the NFL frankly never should have made and should be embarrassed for making. Your Honor, unless Your Honor has any questions about the Steelers' contract I'd like to move to unconscionability. Okay, well the principal thing I wanted to ask about the Steelers' contract review is you've spent now eight minutes and you haven't even mentioned the principal ground that the district court relied on. Now I don't mean to say that you're waiving that, but do you really have any defense to the argument that the absence of Mr. Goodell's signature on the copy that was filed in the court is controlling here? Well, Your Honor, I do think that the Steelers, it's their burden on a motion to compel arbitration to submit the proper documentation. I don't think they did. So I think Judge Capote correctly ruled in her Honor's decision and I think it was too little too late to bring that contract up. No, I mean she, as I think is her right, came up with an interesting notion and decided the case on that basis and it was only then that the defendants had the incentive or opportunity to say, oh, but wait, we didn't know that was going to be an issue. Here, here's the signed copy. And the argument in response is that's been waived because they should have put that in the first place. I guess my position is, Your Honor, I do believe Judge Capote got it right, but that's why my focus is on the substantive issue. And then on Massachusetts law, you're really saying that the contract that was signed with Massachusetts is an illusory contract. When Ms. Flores worked under it for years, got paid all the time as he was supposed to get paid, performed his duties in an exemplary fashion as he was required to do, everyone thought that was the binding contract that they were working under, but because of the possibility of amending the NFL Constitution by which he was otherwise bound, everything in that contract is out the window. Just the arbitration clause is out the window. No, I disagree with that articulation of our argument. We do not take the position that Mr. Flores did not have an enforceable contract with the Patriots. He did. It was a signed contract that provided terms that both sides agreed to, including payment for services rendered. So what's illusory? The question under Massachusetts law, this is what all the Massachusetts courts say, is that when you have an employee handbook, which is really, in effect, what the NFL Constitution is, a very lengthy version of an employee handbook, when you have an employee handbook or set of policies under Massachusetts law, that will not be considered a contractual document unless there is essentially a good reason. There's a number of factors which I'll go through. Good reason to treat that as a contract. And so the factors include, first and foremost, whether the document can be unilaterally modified without notice. Other factors include whether it's subject to negotiation. And then the third factor, which covers a number of things, whether there's special emphasis placed on it by the employer. For instance... But do any one of those cases deal with other-than-at-will employees where the employee handbook is the only contract? And it's a sort of one-sided thing, isn't it? Because you can be fired at any time. You don't really have any rights, unlike Mr. Flores under his contract. He has a right to be paid through the entire term of the contract. And so the employer is saying, yeah, but you're bound by this, which we can change at any time. That's entirely our document. That's a little different than somebody who signs a contract that has binding obligations on both sides and incorporates something else by reference. Your Honor, under Massachusetts law, whether the document is an employee handbook that an employee is trying to use to challenge their termination as an employee at will, or whether it's an employer using the handbook to enforce a provision such as an arbitration agreement, Massachusetts law applies the same way. But is there any case that applies that in a context where there is a binding contract between both parties of employment as opposed to an employee at will? Well, I'd like to... The answer is both, I guess, yes and no, and I'll explain why. I'd like to first direct the court to two cases in our brief, Douglas v. Johnson Real Estate and Domichetti v. The Soldier School on page 43 of our brief. Both of those cases, the employer had an arbitration agreement in an employee handbook. And despite the fact that the employee continued to work even after the handbook was provided to the employee, the arbitration agreement was enforced. Excuse me, the arbitration was unenforceable because the employer had the ability to unilaterally modify the document. And so in those cases, to get back to Judge Lynch and your question, there was no written contract. But that is really a distinction without a difference because the employer-employee relationship is always contractual. And so the employee in that situation... Can you explain to me where in this record I could determine that the Patriots, or any team, the Patriots, the Broncos, could unilaterally modify this contract? I understand that Commissioner Grudel can, but where do I look to see that, given the calligraphy that we have with your friend on the other side, that the teams themselves have any real authority to unilaterally modify any of these contracts that are largely this result or under the umbrella of the NFL Constitution? The teams, I would agree with Your Honor. There's nothing in the employee contract that gives the team the ability to amend the Constitution. So why doesn't that end the inquiry? Because the issue under Massachusetts law is whether the terms are subject to unilateral modification. But you've been framing it as the teams. Well, admittedly... Now you're shifting to Commissioner Grudel. Is that what you're doing? The reason for the apparent shift is that this is a unique situation where you have most cases involving an employee and an employer, so the court doesn't need to address whether it's the employer that has the unilateral ability to modify or whether there's some other group or entity that could modify the contract. The agreement technically is between the teams and your client, correct? It is, Your Honor. And what you're telling me, you acknowledge, and I appreciate this, that the team itself is not really in a position to unilaterally modify the contract, but the NFL is. It is. That's right, Your Honor. And part of the allegations in our underlying complaint is that the NFL is an employer, is a joint employer with all the teams. So to sort of separate out the NFL, it's only the NFL. The NFL is made up of the teams. So as a matter of Massachusetts law, is there a law, is there some case on this issue? Look, I heard your friend... I'm a fan of certification, but I don't hear any request for certification by a society more disresolved in federal court for digging. No, there's no request for certification, Your Honor, but I think the issue is, and there's a whole long line of cases cited in our briefs, both sides' briefs, on this issue of unilateral modification under Massachusetts law. But there's nothing like this. There's nothing that... There's nothing like this. Even remotely like this, where there's a, you know, are you a joint employer? But really, it comes down to one person who is not technically the party to the agreement who has the unilateral right to modify all agreements across teams. Is that right? Well, and there's no case that addresses this, again, because of the unique structure of the NFL, of course, compared to other employers. But I would suggest to Your Honor that what the courts would look at in Massachusetts is just whether the term is subject to modification without notice to the employee. And I think the Massachusetts courts would say that if a term can be modified without notice to the employee, the contract or the document does not become a contract. Unconscionability. Unconscionability. So, like I mentioned earlier, the NFL is an employer like any other employer, and they're not entitled to any special treatment. The FAA is very clear. There was some discussion about, doesn't Section 10 of the FAA permit courts to look at bias post-arbitration? And it does. But first and foremost, Section 9, or 9 U.S.C. Section 2 of the FAA says that an arbitration contract will be void for the same reasons as any other contract. And one of those reasons, under Massachusetts and Pennsylvania law, frankly under every state, is unconscionability. A contract will not be enforced if it is unconscionable. Respectfully, it is hard to think of something more unconscionable than the NFL having its own commissioner decide whether claims against the league and its teams violate the anti-discrimination laws. Directly after this lawsuit was filed, to the extent any proof is needed that Mr. Goodell can't be impartial, despite the fact that he's been paid over the course of his career hundreds of millions of dollars to serve the team's best interest, the day this lawsuit was filed, Mr. Goodell's office issued a press release saying that claims were without merit. Numerous federal and state courts, Your Honors, have found that where the chief executive of a company is the arbitrator or members of the board are arbitrators, that that is unfair and unconscionable. And even in situations where the employer merely had some oblique control over the members of an arbitration list and still had a fair process, even in those situations where the employer had some ability to sort of tinker with who would be the arbitrator, even in those situations, courts have found that to be unconscionable. We've cited these cases of pages 27 through 37 of our brief. And, I mean, there are situations where, this is McMullen v. Meyer, Sixth Circuit, interpreting Michigan law. The employer used the AAA rules. The American Arbitration Association rules were employed, and the employer created a list of arbitrators that included attorneys who were unaffiliated with the employer and members of AAA or JAMS arbitration lists. So the employer had an obligation in that case to put people with an indicia of neutrality on the arbitration list, but the court still said that that was unconscionable simply because the employer controlled the arbitration list. And so that's just an example of a situation that is even far less unconscionable than what we have here. And so Mr. Goodell, under any formulation, cannot be a fair arbitrator, and there is no ability under the NFL Constitution for him to delegate his responsibility to anybody else. We then move on to procedural unconscionability, which, as your honors noted, is the sliding scale, so long as there's sufficient substantive unconscionability, procedural unconscionability can be a lesser amount. There is plenty of grounds here, your honors, to find procedural unconscionability. The first is, as I've held up before, this document, this 447-page document, is the NFL Constitution. One page, buried in the middle, in one line, is the arbitration agreement. You're not contending that Mr. Flores was not aware of this provision, are you? I am contending that Mr. Flores did not read the NFL Constitution. Nobody thought he read the NFL Constitution. Did he have some awareness that there is an arbitration agreement somewhere in the NFL Constitution, without maybe knowing what the exact terms were? Probably, but I can't even really frankly tell you, your honors. But the point is, this is a contract. Excuse me. This is a document, a massive document, with a one page, embedded in the middle, arbitration agreement. The NFL Constitution was never provided to Mr. Flores. It was never walked through and reviewed with Mr. Flores. He was never given any directions on how to access it. So that's just one component of procedural unconscionability. Second, he had no ability to negotiate the NFL Constitution. We've discussed that already. In fact, the NFL, even if he wanted to negotiate it, it can't be amended without all the teams agreeing and there being a whole process. My friend mentioned that Mr. Flores, on the procedural unconscionability issue, that Mr. Flores is a sophisticated party. Don't dispute that. But the issue is not whether Mr. Flores is sophisticated. The issue is the relative bargaining power of the parties. And so Mr. Flores being sophisticated is one thing, but as compared to the sophistication and resources of the Patriots, the Steelers, and the NFL, there's a wildly unequal bargaining power. And as your honors mentioned, Mr. Flores, this was take it or leave it. Mr. Flores, if he wants to be a coach in the NFL, he has no choice whatsoever but to take the arbitration, the Constitution as it is. So procedural unconscionability, your honors, clearly exists here. Can you maybe answer the following question? And this goes to the Section 10 argument. How closely tied are these substantive conscionability issues in particular to evident partiality issues post-arbitration? In other words, we've got a bunch of cases, I think, where similar issues have arisen in the post-arbitration context that we and other courts apparently have concluded that that's not sufficient to support a challenge on evident partiality grounds. That's where I was going next, your honor, which is the NFL Management Council case, the Brady case. And other cases that address evident partiality under the FAA. Again, the FAA has two functions to ensure that an arbitration is fair. The first is Section 9. Is the contract void for any reason that would normally be void? The second question is, assuming there is a valid contract that can be enforced after the proceeding, after the proceeding all the way to judgment, then there can be a review under Section 10 whether there is evident partiality. And the courts have said that is a very, very narrow review. In fact, in the NFL Management Council case, which actually didn't even involve really the FAA, even though the FAA was cited, it was really a case that was focused on the requirements of the LMRA. Both the LMRA and the FAA, when there's a post-arbitration review, it's among the strictest and narrowest reviews that a court conducts. And the court in this court in NFL Management Council said that exactly. And so if one is only able to challenge the fairness of the process, the neutrality of the process after the hearing, their review is extremely limited. And there's no reason why the doctrine of unconscionability should just be discarded, because there is this secondary review. What's a little odd about this, as both sides have noted, that the conscionability standard, or unconscionability standard, is a matter of state law. And so there's a significant amount of deference, such as analytically, it's a state law. And we don't have a lot of state law that quite, I think, both sides have acknowledged, that quite fits into this frame, which both sides have acknowledged is a little unique, because of the sports feature, I take it. So I'm not sure that it's that different. I mean, it's sort of a narrow, it's a review of state law, trying to determine how state law applies to this set of facts. I don't know that, I haven't heard anything that helps me figure out what the actual, other than the larger framework, how to determine under Massachusetts law or Pennsylvania law that this is unconscionable. And I'll just add one thing, which is Caponi, seems to have used, as I told your friend, or indicated to your friend, seems to take it to as much of a conclusion does not make sense to me. Well, I certainly agree. I think you would agree. I certainly agree that it would not make sense that it is effectively saying the doctrine of unconscionability does not apply in the context of an arbitration agreement because of this section 10. But that is not at all what section 10 says. Section, again, like I said, sorry to repeat myself, if there's a contract that gets through unconscionability, that gets through illusory, that gets through any other defense, we still need there to be at the back end, which is what Congress said in passing the FAA, there still needs to be something on the back end that makes sure that the arbitration was actually performed in a fair way. But we're not going to review that terribly closely because we're going to provide deference. Your Honor, you're correct that there is not a lot of Massachusetts-specific, Pennsylvania-specific case law on unconscionability that the parties have cited. I don't think that's all that unusual. The unconscionability case law that we cited on, again, pages 27 through 37 involves a lot of different appellate courts, Fourth Circuit, Sixth Circuit, different appellate courts from different states. Applying the doctrine of unconscionability, and if you're honored to read those decisions, they're often borrowing from other states because these sorts of issues, it's in some ways not surprising that the issue of providing a non-neutral biased forum, whether that's unconscionable, does not come up all that often because most employers, frankly, would not have the gall to install the head of the company as the arbitrator. Well, I think you'd suggest that maybe they will. In the future, if we set a precedent, because it's a little hard to say sports leagues are different and they can do things that nobody else can do, I think the principle would be the opposite, that they can do, certainly, where we're not talking about something that's very unique to this context, like on sports or like conduct on the field or something like that. Well, I do think that when an employer disciplinary situation is at stake, it's something entirely different from when federal statutory rights, particularly discrimination rights, are at stake. But yes, both we in our brief and the amicus brief certainly make the point that if the NFL is allowed to do this, if the Second Circuit greenlights the NFL in saying it's not unconscionable, you're permitted to have the chief executive, who's already said the case doesn't have merit, frankly, if you're permitted to have a chief executive be the arbitrator, there's no reason other employers wouldn't follow. Other employers may try to do other things, but there's going to be a movement, because the courts would have said it's OK, towards processes that are unfair, that favor the employer, because the court would have said you're allowed to do that. And, Your Honor, the last thing I'd like to get into... I just have one more question, though. Is there any case in which... I mean, the other side is relying heavily, quite appropriately, on case law that says that federal statutory rights, like any other dispute, can be subjected to arbitration. Is there any case law that suggests that, in effect, yes, but there are special rules that would apply to the nature of arbitration or the fairness of arbitration, or anything else, when federal statutory rights are involved, as opposed to any other grievance procedure or contractual violation or general all-around fairness problems are at stake? Well, I mean, first... I'd say there's a few ways to address that, but the most straightforward one is the doctrine of effective vindication of rights. And what that doctrine says, in short, is that congressional intent in passing substantive laws, like the anti-discrimination laws, cannot get just run roughshod over by an arbitration agreement. And so... Wait, wait, wait. Is there anything in the arbitration procedure, whether it's by Mr. Harvey or by Mr. Dill, but by the NFL that prevents Mr. Flores from asserting or pursuing his federal civil rights claims? There's nothing in the arbitration agreements that prevents him from pursuing it. Why? You know, I was on the Sardinia panel, which is a little bit of a battle that you can see in the published opinions, and that was actually very important to that panel. Why is it important, going the other way, that he can pursue these federal civil rights claims? And I'm sympathetic to this idea that people ought to be able to pursue them in federal court if they want to, but we are where we are. If he can pursue those in the context of an arbitral proceeding, why doesn't that take care of at least the effective vindication argument? Because, Your Honor, he cannot pursue his claims in that manner effectively. He cannot... Take me through that, because he can make the claim. He can. He can argue the claim. He can. And right now, you can't tell me that he is definitely going to lose or win. I can tell you that he has a wildly unfair and non-neutral forum. And, Your Honor, there have been courts... So there are federal and state courts, right? I can tell you the same thing, where you have, based on the judge, a wildly unfair, non-neutral forum with respect to the federal civil rights claim. I wouldn't make that claim about any judge, Your Honor. I mean, what we're asking for is access to the courts. But give me... I'm asking you for a better standard than that, because what we have articulated, rightly or wrongly, is that so long as you can arbitrate your claim, including the federal civil rights claim, in an arbitral proceeding, so long as it's not cut out, but you're forced to, you're propelled to arbitrate otherwise, then okay. Well, I would suggest, Your Honor, that in Italian colors, the Supreme Court, in Cedeno, in all of the cases that address the issue of effective vindication of rights, none of them expressly says, so long as you can pursue your claim, even if it's in a forum that, I shouldn't even use the word unfair, that's biased, that's not neutral, that you can effectively vindicate your rights. And, Your Honor, there have been two federal courts in particular, appellate courts, that have addressed this. Page 29 of our brief, Walker v. Ryan Steakhouses, there, again, it wasn't the CEO of a company who was serving as the arbitrator. It was a quasi-fair process for selecting arbitrators, but the employer had control over the panel, had some level of control over who would be on the panel, and the court found, we put it in our section on conscionability in our brief, but the court ultimately found that the basis for determining that the arbitration deed was unenforceable was it would, it would fail to allow the plaintiffs to effectively vindicate their statutory rights. And then, Your Honor, on page 32 of our brief, Colby-Burns, this is the D.C. Circuit. Admittedly, this was dicta, but the court was analyzing the issue, I believe in that case it was, the issue was whether the costs were prohibitive that would prevent effective vindication. But the court said in dicta, as part of its analysis, statutory rights, as a quote, statutory rights include both a substantive protection and access to a neutral forum in which to enforce those protections. An employee cannot be required, as a condition of employment, to waive access to a neutral forum in which statutory discrimination claims can occur. Your argument is that on these very, very specific facts where you believe, based on what you said about the post-pleading, was it press release? It was. There's clear evidence of bias, and that should be part of the analysis of whether he effectively vindicated. That's actually a narrower version of what I'm saying. What I'm saying, Your Honor, is that this case with Mr. Goodell, under the specific facts here, this case is easy. This case, we know that this is probably, and this is not hyperbole, this is probably the single most biased person on the planet that could be the arbitrator. And so this case is easy. If we start looking at the cases, again, Walker, which I mentioned, the Hooters v. Phillips case, where there's control over the panel, those cases, I think even in those cases there was an inability to effectively vindicate rights. This case, Your Honors, is an easy one. I think that's the benefit of your argument, to hear from your friend. Thank you. Thank you. So on the grounds on which Judge Caproni actually decided the motion to compel arbitration, I would just say that I think that Massachusetts law is clear, and we cite the Garcia case from the Massachusetts SJC, for the proposition that the law does not require every term of the contract to have a separately stated consideration. And I would add that the premise of the argument is incorrect because neither the team nor the commissioner has the power unilaterally to modify the Constitution. You haven't heard a lot of pushback on that. Yes, reply brief, page 7. Let me address the alternative grounds now. On the issue of timing, as a question of Pennsylvania law, we have law on our side, and the other side, I would respect, does not. The sole case that my friend Mr. Gottlieb cited is the Gehr case from the Middle District of Pennsylvania, and as we explained in our reply brief at page 28, that was a case in which the court concluded that there was other language in the agreement that unambiguously demonstrated that the arbitration provisions at issue should not apply retroactively. We don't have that language here. We have simply the broad language from the NFL Constitution, which contains no temporal limit. And, Judge Lynch, on the question of the integration clause, I think that the integration clause here stands simply for the proposition that documents attached to the agreement are treated as part of the agreement, but that doesn't operate in reverse. The fact that the e-mail... If, for example, this was not an e-mail but was a cover letter that came with the contract to be signed in the same envelope with a paper clip holding them together, that would not be an attachment. I would submit the same outcome. I don't think it operates in the other direction. Where here you have the e-mail that attaches the agreement, I don't think that the integration clause is triggered. And again, I would stand on our reading of the e-mail as a whole, which I think supports the conclusion that that e-mail in no way suggested that the choice of forum here is locked in. Can I just ask you a factual question? I realized in hearing Mr. Gottlieb's argument that I had been reading the 28J letters a little too casually. Do you agree with him that Commissioner Goodell has appointed Mr. Harvey to be the arbitrator in the other cases that were sent to arbitration by the judge? But probably appropriately, he hasn't anticipatorily said anything about who would arbitrate the cases that are before us today. That's correct. I believe that that's technically correct. I think it's a fair... I would think that it would be a fair... Well, it's a fair guess, in a way, about is he going to pick Mr. Harvey or somebody else or anybody else. Are you representing to us, on behalf of your clients, that the NFL's interpretation of the Constitution is that Mr. Goodell has that authority as he's done, I guess, in the other cases? Yes, without question, because the Constitution gives the Commissioner the right to establish rights and procedures, and the Commissioner was pursuing, was appointing Mr. Harvey, pursuant to his authority under the dispute resolution. So we are still forced to guess a bit as to whether he would do the same thing in these cases, though one is hard put to think of why... I'm happy to consult with my client, but I think I could probably safely guess that he would designate Mr. Harvey for these cases as well. And in my remaining time such as it is, let me just say a word about unconscionability to address what I perceive to be the panel's concerns here about the breadth of a ruling in our favor. The language of NFL Management Council is quite clear on this point. It is that the parties entered into this contract knowing full well that the Commissioner would serve as the arbitrator, and if they wanted to restrict his authority, they could have fashioned a different agreement. Now, I understand Mr. Gottlieb to be placing basically dispositive weight on the fact that this is a context involving not player discipline, but rather claims concerning discrimination in the employment context. Now, I would note at a minimum that when you gave him the opportunity, Judge Lynch, he didn't cite any authority for the proposition that for purposes of unconscionability analysis, the analysis should work differently depending on the nature of the claims. But I'm happy to sort of explain how I think this court can draw lines around this context in a way that doesn't give rise to the Walmart hypothetical that we've been discussing. The first is procedural unconscionability. And with regard to that, the sole thing I would add is that I would point the court to 1206 of the joint appendix where Mr. Flores represented in no uncertain terms in the agreement, and this language is contained in the other agreement as well, that he has, quote, read the NFL Constitution and bylaws and league policies, rules, and regulations, and understands their meaning. And I think second, with regard to substantive unconscionability, I do think that the court can say that the sports context is different because of the relevance of the expertise of the commission. I'm assuming that in each one of these unconscionability, or many of these unconscionability cases in Pennsylvania and Massachusetts, you have the same representation. Certainly, it might be hard to put that into a signed document, the same document that says I agree to be bound by the arbitration clause. Well, and so I would simply add the point that I made in my opening argument, Judge Lynch, which is that when you're talking about someone who has been a lifelong NFL coach, I think one can certainly presuppose an awareness of the NFL Constitution and any lack of familiarity with every single provision, I think, is not sufficient to render this procedurally unconscionable. And so the last thing I would say is that with regard to the employment context, I do think that there would be dramatic consequences if this court were to adopt the rule that my friend on the other side is advocating, particularly in the context of sports leagues, many of which are based in this circuit. I think that to the extent that we are discussing... Well, we would only be dealing with Massachusetts and Pennsylvania. Well, that is true, but a decision from this court certainly would be cited under the laws of other states. I don't think that there's anything unique to the laws of those jurisdictions with regard to the specific issue of the employment context. And I do think that, again, what we're talking about for purposes of unconscionability is the mere possibility of bias. We now know, leaving aside the issue that you raised, Judge Lynch, who the arbitrator is here, and if, in fact, once these claims are heard and Mr. Gottlieb acknowledged that they can be fully heard in the arbitration proceeding. And what he said, though, and I understand it, is that it's a much narrower scope of review when we get past, you know, the 6-10 review, evident partiality is much more narrowly reviewed. Well, that is true, but, of course, that is a matter of design under the Federal Arbitration Act. As the court will be well aware, the grounds for review are quite narrow precisely to avoid excessive judicial second-guessing of arbitral awards. And the only other thing I would add in this regard is one thing that we haven't discussed today, but I want to point the court to our discussion on this point in our reply brief at page 25. To the extent that the identity of the arbitrator is a concern for purposes of the unconscionability analysis, the obvious solution to that is severance. And, again, precisely because the district court didn't address any of this in the first instance. The district court, I would submit, should, in the first instance, consider the issue of severance if the court thinks that this is sufficient under the laws of these two states to give rise to an unconscionability problem. I do think that with regard to... What would be severed would be what exactly? I think the provision of the NFL Constitution designating the commissioner as the default arbitrator. And what would make that particularly artificial is that we now know that the commissioner is not, in fact, going to be the arbitrator, again, leaving aside the issues we discussed. It's still his unilateral choice who's going to be the arbitrator, which is the problem that the Sixth Circuit had. Well, that is correct, but he could designate jams. He could designate anyone to serve as the arbitrator. And, again, to the extent that there is a concern about his particular choice, there is the ability to receive review once the claims have been fully adjudicated. And you think that that would ameliorate the structural problem that's been identified. It's just as Richard said. It's not that he can pick angels. It's that he has got the unilateral choice. And is that where you would be fine with, well, would want Judge Capone to consider severing? Well, I suppose that the argument could be made that in conducting the severability analysis that that is an option that should be taken into account. Of course, that's an issue that has not been addressed, you know, in the briefing before this court, and that would ultimately be a question of state law in terms of the correct interpretation of these provisions. Judge, we've kept you very much past your time, although it's been extremely helpful on both sides. Thank you very much for observing this issue. Great. Thank you, Judge O'Leary.